LIDA E. MALONE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 102669.    Promulgated October 8, 1941.

*William H. Watson, Esq.,* for the petitioner.
*John R. Stivers, Esq.,* for the respondent.

OPINION.

KERN: In this case the question is solely whether gain or loss to the stockholder-taxpayer may properly be recognized in the transaction before us. Reduced to its elements, the recapitalization was a surrender of one-half the bank's capital stock by its stockholders and the receipt by them of $62.50 in cash on each share surrendered. Technically, this was carried out by a surrender of all outstanding shares in exchange for new shares and cash. After this was done, the bank's capital stock had been reduced to an amount appropriate to its needs, as required by the Comptroller of the Currency; and the stockholders had the same proportional interest in the bank's assets as before, and the same actual interest, less the $62.50 received on each share surrendered. The last circumstance is established by the fact that the bank stock's book value before the transaction was $138; and that two shares at $138 equal $276, and this sum less $62.50, leaves $214 (in round figures, since the cents do not appear in testimony), which was the stock's book value after the deal was completed.

The issue before us is succinctly stated in the petitioner's petition:

The petitioner in her return for said year, 1937, claimed a capital loss of $1912.50 on account of the retirement of 85 shares of the capital stock of the American National Bank of Pensacola, Florida, owned by her. She received in consideration of the cancellation of the said stock by said corporation the sum of $62.50 per share and she claimed a loss between the difference of $62.50 and the amount paid by her for each respective share; the total loss being $1912.50. The commissioner refused to allow said loss, claiming that the only effect of the retirement of the said 85 shares of stock in said corporation was an adjustment of the basis of the cost of the remaining 85 shares owned by the petitioner. Petitioner alleges that this was error and that in fact the retirement of the said 85 shares of stock was a partial liquidation and that she was entitled to said deduction.

In stating the basis of rejection of the claim, petitioner has adopted the language of the respondent in his deficiency notice. This is significant, for no claim is made, therefore, by the respondent that

the cash distributed ($62.50 the share) constitutes a distribution in the nature of a taxable dividend under section 115 (g) of the Revenue Act of 1936, and we, therefore, leave that question and confine ourselves to the sole question of whether any loss was realized in the transaction.

Respondent contends that there was an "exchange" here which would fall under section 112 (b) (2), as stock for stock in the same corporation, or under subsection (e) as an exchange not solely in kind, as to which no loss is to be recognized.

The transaction here was obviously not an "exchange of stock" in the ordinary sense, for the issuance of one new share certificate for every two of old share certificates was merely the mechanical device employed to carry out reduction in the capital stock of the bank. At the same time there was a distribution of a small part of the bank's assets, to the extent of $62.50 with each new share. The only question, then (the dividend question being waived), is whether the $62.50 thus received constituted a liquidation of those shares, or was merely to be taken into account in computing the basis on the liquidation or sale of the remaining shares at some future time. If it was the first, loss in the circumstances would have been realized. The applicable provisions of the Revenue Act of 1936, contained in section 115 (c) and (i), are set out in the margin.[1]

Our decision in *Orie R. Kelly*, 36 B. T. A. 507, reversed as *Kelly* v. *Commissioner*, 97 Fed. (2d) 915, is practically on all fours and we think resolves the question here. There petitioner was a stockholder of a banking corporation with a paid-in capital stock of four million dollars, and a paid-in surplus of three and one-half million

---

[1] SEC. 115. DISTRIBUTIONS BY CORPORATIONS.

\* \* \* \* \* \* \*

(c) DISTRIBUTIONS IN LIQUIDATION.—Amounts distributed in complete liquidation of a corporation shall be treated as in full payment in exchange for the stock, and amounts distributed in partial liquidation of a corporation shall be treated as in part or full payment in exchange for the stock. The gain or loss to the distributee resulting from such exchange shall be determined under section 111, but shall be recognized only to the extent provided in section 112. Despite the provisions of section 117 (a), 100 per centum of the gain so recognized shall be taken into account in computing net income, except in the case of amounts distributed in complete liquidation of a corporation. For the purpose of the preceding sentence, "complete liquidation" includes any one of a series of distributions made by a corporation in complete cancellation or redemption of all of its stock in accordance with a bona fide plan of liquidation and under which the transfer of the property under the liquidation is to be completed within a time specified in the plan, not exceeding two years from the close of the taxable year during which is made the first of the series of distributions under the plan. In the case of amounts distributed (whether before January 1, 1934, or on or after such date) in partial liquidation (other than a distribution within the provisions of subsection (h) of this section of stock or securities in connection with a reorganization) the part of such distribution which is properly chargeable to capital account shall not be considered a distribution of earnings or profits.

\* \* \* \* \* \* \*

(i) DEFINITION OF PARTIAL LIQUIDATION.—As used in this section the term "amounts distributed in partial liquidation" means a distribution by a corporation in complete cancellation or redemption of a part of its stock, or one of a series of distributions in complete cancellation or redemption of all or a portion of its stock.

dollars, which, in 1932, retired 50 percent of its outstanding stock by returning to its stockholders $800,000 in cash and voting trust certificates representing stock in another corporation with a fair market value of $480,000. We held that the distribution was not a taxable dividend under section 115 (g), Revenue Act of 1932, *Henry Babson*, 27 B. T. A. 859; affd., 70 Fed. (2d) 304; *Commissioner* v. *Quackenbos*, 78 Fed. (2d) 156; but that, since the corporation did not distribute to its stockholders any of its paid-in or earned surplus, but actually increased its surplus by $100,000, and since there was no change in the proportionate interests of the stockholders in the surplus, petitioner sustained no recognizable loss on the cancellation of stock, following *Hellman* v. *Helvering*, 68 Fed. (2d) 763.

The only differentiating fact, and that is not a significant one, between our case and *Orie R. Kelly, supra*, is that there was there a distribution of stock in another corporation in addition to cash. We there said at page 515:

> There remains for our consideration respondent's alternative contention that * * * petitioner did not sustain any recognizable loss on the transaction. As to this contention we think the respondent is correct. *Although the Trust Company reduced its outstanding capital stock by exactly one-half, it did not distribute to its stockholders a like proportion of its assets.* Not only did it not distribute any of its paid-in or earned surplus, but it actually increased its paid-in surplus to the extent of $100,000. Furthermore, petitioner and the other stockholders of the Trust Company retained the same proportionate interest in such paid-in and earned surplus after the reduction of the capital stock as they had before the reduction took place. Under such circumstances, we think the alleged loss claimed by petitioner was not in fact realized as he still owned the same proportionate interest in the undistributed assets as he had before. In our opinion, the alleged loss should be added to and be considered as a part of the basis of the remaining stock of the Trust Company, the benefit of which, petitioner will receive when he in some future year disposes of such remaining stock. See *Hellman* v. *Helvering*, 68 Fed. (2d) 763; *Charles M. Haft*, 20 B. T. A. 431; and *Bed Rock Petroleum Co.*, 29 B. T. A. 118. Cf. *Commissioner* v. *Wright*, 47 Fed. (2d) 871; and *Florence M. Quinn*, 35 B. T. A. 412. [Italics added.]

And again at page 516:

> * * * As pointed out *supra* there was not *in fact* "a partial liquidation of a corporation." No part of the surplus or undivided profits account of the Trust Company was distributed to the stockholders. On the contrary, such account was augmented through the contribution by the stockholders of $100,000 to it.

With due respect to the holding of the Second Circuit, in reversing our decision above, we are unable to accept the reasoning of the opinion. We are unable to see how the distribution of cash and stock of an aggregate value of $1,280,000 can constitute a redemption of 50 percent of the stock of a corporation with a then outstanding paid-in surplus of $3,500,000. It is true that *Hellman's* case may be

distinguished on its facts, in that the stockholder there was a sole stockholder, but the basic principle remains unaltered. In *Quackenbos's* case, relied on by the court in *Kelly's* case, there was direct purchase by the corporation of its stockholders of one-third of its outstanding shares at a cost of $90 the share, which may be supposed to have had some reasonable relation to the then fair market value of the shares.

Subsection 115 (i), defining a "partial liquidation", as used in subsection (c) is very clear that the term means "a distribution by a corporation in *complete cancellation* or redemption of a part of its stock." Where the full capital value of each share, as represented by the corporation's surplus, is redeemed, the redemption obviously complies with the statute, but where the distribution in cash, or assets, or both bears no reasonable relation to the fair market value of the stock redeemed, it is not such a return of his capital to the stockholder as to constitute a partial liquidation of his stock. Whether the stockholder's holding after the distribution is proportionally the same can not be a final criterion, since any regular corporate distribution to all shareholders, whether a dividend or in partial liquidation, would leave the stockholders in the same relation to each other and the corporation as before; the corporation's assets only would be diminished. In other words, we understand the word "partial" to mean the *complete* redemption, by a return of the full value of those shares which are redeemed; and not to mean a distribution of a *part* of the value of the shares said to be redeemed. See *W. C. Robinson*, 42 B. T. A. 725. To adopt the latter view, as followed by the Second Circuit, would leave the door open to distributions essentially in the nature of dividends which would wholly escape taxation merely by the corporation's using the device of a partial reduction of its capital stock. We can not believe that the statute so intends and must therefore decline to follow the Second Circuit's decision in *Kelly's* case here.

We are of the opinion that the distribution here was not a partial liquidation within the meaning of section 115, and consequently, that the petitioner is not entitled to deduct any loss on her shares measured by the difference between her (or her donor's) cost and the cash distributed. We do not, therefore, discuss the facts in evidence as to cost and time of acquisition of these shares which are set out in our findings of fact.

Reviewed by the Board.

*Decision will be entered under Rule 50.*

SMITH and TURNER concur only in the result.